**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **LPP MORTGAGE LTD.** | **CIVIL ACTION NO. 04-2031** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **STEWART A. CATHEY, ET AL.** | **MAG. JUDGE JAMES D. KIRK** |

**RULING**

Plaintiff LPP Mortgage, Ltd. ("LPP") brings this suit against Stewart A. Cathey ("Mr. Cathey") and Donna B. Cathey (collectively "the Catheys") to collect the remaining balance due on a promissory note.

Pending before the Court are cross motions for summary judgment [Doc. Nos. 13 and 20] filed by LPP and the Catheys. Both parties have filed Memoranda in Opposition to the Motions for Summary Judgment [Doc. Nos. 18 and 24]. For the following reasons, LPP's Motion for Summary Judgment is hereby GRANTED, and the Catheys' Motion for Summary Judgment is DENIED.

**I.     FACTS AND PROCEDURAL HISTORY**

On March 6, 1997, Stewart A. Cathey & Sons, Inc. ("Cathey Inc.") executed a 504 Note (the "Note") in the amount of $223,000.00 in favor of Northeast Louisiana Industries, Inc. ("NELI"). Mr. Cathey also executed a personal guaranty (the "Guaranty") to guarantee the payment of the Note.

The same day, the Catheys secured the Note and Guaranty by assigning their rights, as owner and beneficiary, in Ohio National Life Insurance Company Policy No. 6169526 (the "Life

1

Insurance Policy") to NELI.

On March 6, 1997, contemporaneously with the Catheys' execution of the Note and Guaranty, NELI assigned the Note, Guaranty, and Life Insurance Policy to the United States Small Business Administration ("SBA"). The same day, Mr. Cathey also physically handed the original Life Insurance Policy to the SBA.

On May 26, 1998, Cathey Inc. filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court"). The Catheys also filed a joint Chapter 11 bankruptcy in the Bankruptcy Court the same day. Because a plan of reorganization was never confirmed, the Catheys' Chapter 11 bankruptcy case was dismissed by Order of the Bankruptcy Court on September 1, 1999.

In August 2000, the SBA assigned and conveyed to LPP all of its rights under the Note, Guaranty, and other associated collateral securing the Note. Prior to the assignment, the SBA had lost the Note, and, accordingly, the SBA executed a lost note affidavit. In addition, LPP advertised the loss of the Note in the Monroe, Louisiana, periodical, *The News-Star*, on November 19, 2005, and in the New Orleans, Louisiana, periodical, *The Times-Picayune*, on November 20, 2005. There has been no response to the two advertisements.

On September 30, 2004, LPP filed suit to recover the balance due on the Note.[1] On January 17, 2006, LPP filed a Motion for Summary Judgment. On February 6, 2006, the Catheys filed a Motion for Summary Judgment that also served as their Memorandum in Opposition to

---

[1]To date only four payments have been made on the Note: (1) September 3, 1997, in the amount of $1,725.48; (2) October 2, 1997, in the amount of $1,826.98; (3) October 5, 1997, in the amount of $1,852.59; and (4) November 4, 1997, in the amount of $1,826.98. The outstanding principle balance due on the Note is $220,567.37.

LPP's Motion for Summary Judgment. On February 22, 2006, LPP filed its Memorandum in Opposition to the Catheys' Motion for Summary Judgment.

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

    **B.    STATUTE OF LIMITATIONS**

The federal government and its agencies are entitled to a six year statute of limitations period in contract actions. Title 28, United States Code, Section 2415(a) provides in pertinent part that, " . . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . ." 28 U.S.C. § 2415(a). This statutory provision applies to the SBA. *See United States v. McReynolds*, 809 F.2d 1047, 1049 (5th Cir. 1986).

Assignees of contract rights of the SBA are also entitled to the benefit of this six-year limitations period. *See F.D.I.C. v. Bledsoe*, 989 F.2d 805, 809-10 (5th Cir. 1993) (holding that assignees of rights from F.D.I.C. and F.S.L.I.C. obtain the six-year limitations period); *see also UMLIC VP LLC. v. Matthias*, 364 F.3d 125, 131-33 (3rd Cir. 2004) (holding that an assignee of rights from the SBA loan stood in the shoes of the SBA and was subject to the six-year statute of limitations).

    **1.    Interruption in Accrual of Statute of Limitations**

As a threshold matter, the Court must determine whether LPP timely filed its claim within six years after the right of action accrued. The Catheys claim that their personal obligation and Cathey Inc.'s obligations on the Note matured upon their bankruptcy filings in May 1998. As a result, the Catheys argue that LPP is prohibited by the statute of limitations

from recovering on the Note.[2]

LPP argues that it is not barred from seeking to enforce its right to collect the balance due on the Note. LPP argues that because the Catheys expressly acknowledged the Note and Guaranty obligations on numerous occasions in their Chapter 11 bankruptcy filings, the statute of limitations period was interrupted and began to run anew.

The acknowledgment of a debt interrupts the running of the applicable statute of limitations. Title 28, of the United States Code, Section 2415(a) provides that the six-year limitation period is interrupted when a person provides written acknowledgment of his or her debt. 28 U.S.C. § 2415(a); *see also United States v. Culver*, 958 F.2d 39, 41 (4th Cir. 1991) ("[l]isting of the debt in the financial statements given to the SBA served as an acknowledgment of the debt and was sufficient to start anew the running of the limitations period as stated in § 2415(a)."); *Midstates Resources Corp. v. Farmers Aerial Spraying Serv., Inc.*, 914 F.Supp. 1424, 1427 (N.D. Tex. 1996) (holding that when a debtor recognizes his or her obligation to pay a debt, the statute of limitations in § 2415(a) begins to run anew); *see generally F.D.I.C. v. Cardona*, 723 F.2d 132, 137 (1st Cir. 1983) (listing debt in bankruptcy schedule is acknowledgment of the debt).[3]

---

[2]Louisiana Civil Code § 3498 provides a five-year prescriptive period or statute of limitations on negotiable instruments that begins to accrue from the day payment is exigible. The Catheys state in their Answer [Doc. No. 5] that the five-year period is applicable to this case. However, the Court has already determined that the correct applicable time period is six years because the SBA is a federal agency, and LPP is entitled to the benefit of 28 U.S.C. § 2415.

[3]Louisiana law is identical to § 2415(a). "Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." La Civ. Code art. 3464. "Prescription commences to run anew from the last day of interruption." La. Civ. Code art. 3466. The Louisiana Supreme Court has held that listing debt in the schedule of debts in a bankruptcy proceeding is sufficient acknowledgment to interrupt a prescription. *See*

5

On May 26, 1998, Cathey Inc. filed for Chapter 11 bankruptcy relief in the Bankruptcy Court. Schedule D of Cathey Inc.'s schedules identifies LPP's claim as liquidated and undisputed. [Doc. No. 13, Exh. 17]. On December 22, 1998, Cathey Inc. also filed its First Amended Disclosure Statement, which stated that "it believes the claim of the SBA to be fully secured," and "this creditor's claim shall be repaid in full, with interest . . ." [Doc. No. 13, Exh. 20].

On May 26, 1998, the Catheys also filed for Chapter 11 bankruptcy relief in the Bankruptcy Court. The list of Twenty Largest Unsecured Creditors filed by the Catheys in their bankruptcy case identified NELI as the holder of an undisputed claim for approximately $300,000.00. [Doc. No. 13, Exh. 22]. The Catheys also identified NELI and SBA as the holders of an undisputed secured claim arising from the Note in their Schedule D filing. [Doc. No. 13, Exh. 23]. In the Catheys' Disclosure Statement, filed on February 3, 1999, they attach and incorporate a copy of their bankruptcy schedules, including Schedule D, which acknowledges NELI and the SBA as the holders of an undisputed claim of approximately $380,000.00.[4] [Doc. No. 13, Exh. 17 and 24].

The statute of limitations began to accrue in May of 1998. The period was interrupted and began to run anew each time the Catheys acknowledged their debt in their Chapter 11 bankruptcy proceedings. The evidence indicates that the Catheys acknowledged their debt in

---

*Meridian Fertilizer Factory v. Collier*, 193 La. 815, 820 (1939); *see also Chalkey v. Pellerin*, 186 So. 382, 383 (La. App. 1 Cir. 1939) (acknowledging debt in sworn schedule of debts in bankruptcy proceeding interrupts prescription).

[4]The Catheys stated in their disclosure statement that they anticipated objecting to certain claims, but no evidence has been presented to demonstrate Cathey Inc. or the Catheys objected to LPP's claim.

6

their Disclosure Statement on February 3, 1999. Thus, the six-year statute of limitations began to run anew on February 3, 1999. LPP filed suit on September 30, 2004.

Therefore, the Court finds that LPP timely filed its suit. Accordingly, LPP's Motion for Summary Judgment is GRANTED, and LPP is not barred from pursuing its claim against the Catheys.

 **C.** **LPP's Claim**

  **1.** **Federal Law**

While LPP's claim against the Catheys is timely, the Catheys raise state law affirmative defenses. The Catheys argue that LPP is unable to maintain its claim because LPP has not adequately proven its ownership and right to enforce the Note and neither the SBA nor LPP complied with Louisiana's statutory requirements to enforce lost promissory notes.

LPP argues the affirmative defenses raised by the Catheys are inapplicable because LPP elected federal law to control the terms of the loan agreement.[5]

The Supreme Court has generally held that "federal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979). However, determining whether the source of federal law is adopted state law or judicially created federal common law is often difficult. *See United States v. Irby*, 618 F.2d 352, 354 (5th Cir. 1980). Fortunately, the Supreme Court has provided guidance in *Kimbell*.

*Kimbell* instructs courts to apply a balancing test that considers two factors in addition to

---

[5]The Term Loan Agreement reads in pertinent part, "[t]his agreement shall be governed by the laws of the State of Louisiana and/or the United States of America and/or the District of Columbia, at the option of the U.S. Small Business Administration." [Doc. No. 13, Exh. 3].

7

a need for uniform federal rules. These two factors balance the "necessity of uniformity of laws governing the particular programs with the interest of the state to regulate commercial activities which are normally governed by state law." *See Irby*, 618 F.2d at 354-55.

LPP argues that submitting the SBA and other governmental agencies to state law would threaten the SBA, the FDIC, and other governmental agencies with the "unenforceability of thousands of notes in their custody and require a huge new administrative burden on such agencies."[6] [Doc. No. 24, p. 7].

In this case, LPP is entitled to the rights of the SBA as its assignee, there is a relevant federal statute of limitations, and LPP has chosen federal law to control the Term Loan Agreement.

After applying the factors set forth in *Kimbell*, the Court finds that the Catheys' affirmative defenses under state law are inapplicable, and the Catheys are not entitled to summary judgment.[7]

However, assuming arguendo, that the Catheys' affirmative defenses are applicable, the Catheys have failed to present evidence that sufficiently demonstrates that there are no genuine issues of material fact that would entitle them to summary judgment. The Court will discuss

---

[6]The Catheys have not presented any argument or evidence that demonstrates why state law is applicable in this case.

[7]*Kimbell* encourages the adoption of state U.C.C. provisions to serve as the source of federal law. *See Kimbell*, 440 U.S. at 729. One affirmative defense raised by the Catheys involves La. Rev. Stat. § 10:3-309(a), which is similar to § 3-309 of the Uniform Commercial Code. While the Catheys may assert this affirmative defense as an appropriate source of federal law, for reasons discussed below, the Catheys have failed to present sufficient evidence that would entitle them to summary judgment on this affirmative defense.

8

each affirmative defense below.

## 2. State Defenses

### a. Louisiana Revised Statute § 13:3740

The Catheys argue that LPP has no right to enforce the Note because the assignment document from the SBA failed to comply with Louisiana's statutory requirement for enforcing a right to collect a debt on a lost promissory note.

Louisiana Revised Statute § 13:3740 provides:

> When an instrument in writing, containing obligations which the party wishes to enforce, has been lost or destroyed, by accident or force, evidence may be given of its contents, provided the party show the loss, either by direct testimony, or by such circumstances, supported by the oath of the party, as render the loss probable; and in this case, the judge may, if required, order reasonable security to be given to indemnify the party against the appearance of the instrument, in case circumstances render it necessary.

La. Rev. Stat. § 13:3740.

The Catheys claim that LPP cannot collect on the Note because of various defects in an assignment document signed by the SBA's Arnold Rosenthal. The Catheys claim that the alleged assignment document is not notarized and not in proper affidavit form, is undated, and refers to a different SBA loan number.

LPP presents multiple pieces of evidence that demonstrate the SBA's assignment of the Note, Guaranty, and other rights to LPP was proper. First, LPP submits an affidavit of Clark E. Enright, who authenticated a copy of the Loan Sale Agreement between the SBA and LPP, which reflects that the SBA assigned its rights in SBA Loan No. 8581103510 in the original principal amount of $223,000.00 to LPP. [Doc. No. 13, Exh. 1]. Second, the Loan Sale Agreement authorizes the SBA to execute powers of attorney to designated persons for the purpose of

making specific loan assignments to LPP. [Doc. No. 13, Exh. 1]. Third, LPP submitted an affidavit of SBA attorney, Graciela Gatell, who stated that, pursuant to normal SBA policies, the SBA changes its internal loan numbers from time to time, and that the SBA Loan No. 8581103009 is the same loan as the SBA Loan No. 8581103510. [Doc. No. 13, Exh. 26]. Finally, LPP submits an affidavit of Richard Blewett, the SBA administrator for the 504 program, who stated that internal SBA records indicate that SBA Loan No. 8581103510 was sold to Beal Bank, LPP's servicing agent for the loan. [Doc. No. 13, Exh. 6].

Under these circumstances, the Court finds that the Catheys have failed to present evidence that sufficiently demonstrates that there are no genuine issues of material fact that would entitle them to summary judgment on this affirmative defense. *See infra* discussion in Section E. Accordingly, the Catheys' Motion for Summary Judgment in this respect is DENIED.

### 2. Louisiana Revised Statute § 10:3-309(a)

The Catheys also briefly argue that LPP cannot enforce their claim because LPP cannot show that the SBA held the Note at the time of loss. However, the Catheys have not provided any evidence to support their argument. LPP argues that the evidence demonstrates that the SBA held the Note at the time of its loss.

Louisiana Revised Statute § 10:3-309(a) provides:

> A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

La. Rev. Stat. § 10:3-309(a).

LPP provides evidence that the Note was endorsed and delivered to the SBA on the same day Cathey Inc. executed the Note. Exhibit 9, the Notarial Endorsement and Assignment of Mortgage Note, reads that on March 6, 1997, the payee of the Note endorsed and delivered the Note to the SBA, and the Note was recorded. [Doc. No. 13, Exh. 9]. In addition, William Scott, LPP's agent, testified in his affidavit that the Note had been lost when LPP first received the loan documentation from the SBA. [Doc. No. 24]. Finally, Richard Blewett's affidavit demonstrates that the SBA was in possession of the original Note when it was lost, that the loss was not by seizure or transfer to another person, and that the SBA cannot obtain possession of the original Note. [Doc. No. 13, Exh. 6].

Under these circumstances, the Court finds that the Catheys have failed to present evidence that sufficiently demonstrates that there are no genuine issues of material fact that would entitle them to summary judgment on this affirmative defense. *See infra* discussion in Section E. Accordingly, the Catheys' Motion for Summary Judgment in this respect is DENIED.

**D.     Advertisement of an Instrument**

Finally, the Catheys argue that LPP is not entitled to recover on the Note because LPP did not comply with La. Rev. Stat. § 13:3741 by advertising the loss of the Note within a "reasonable time in a public newspaper." The Catheys point out that LPP advertised the lost Note more than five years after the effective date of the Loan Sale Agreement and over one year after LPP filed suit.

Louisiana Revised Statute § 13:3741 provides:

> In every case where a lost instrument is made the foundation of a suit or defense, it must appear that the loss has been advertised within a reasonable time in a public newspaper and proper means taken to recover the possession of the instrument; provided, that

advertisement of a lost note shall not be necessary in any case where a surety bond given by a person who owns property liable to seizure, and who is domiciled in the parish where the security is to be given, or a commercial bond issued by an insurance company licensed to do business in the state of Louisiana, is furnished to protect the maker and/or his endorsers of said note from loss resulting from said note falling into the hands of a holder in due course provided that the bond must be in amount equal to the face of the note plus twenty-five percent thereof.

La. Rev. Stat. § 13:3741.[8]

Because the suit was filed on September 30, 2004, the Catheys claim that LPP's advertisements in *The News-Star*, on November 19, 2005, and in *The Times-Picayune*, on November 20, 2005, were unreasonable.

First, LPP argues that Mr. Cathey's Guaranty, not the Note, is the foundation of its suit. LPP argues that the maker of the Note, Cathey Inc., is not a party to the suit and advertisement of the Note is not required under the provisions of § 13:3741. *See LeJeune v. New Orleans Land Co.*, 1916 WL 1563, at *5 (La. App. Orl. Jan. 3, 1916) ("A lost instrument must be advertised when plaintiff demands its enforcement but not when it is offered in evidence to establish a collateral fact.").

Second, LPP argues that failure to advertise the lost Note when the suit is pending only abates the case until the advertisement is accomplished. *See Shreveport Long Leaf Lumber Co. v. Garson Bros.*, 152 La. 343, 346-47 (1922) (noting that the suit could have been abated until the lost note was advertised); *see also Glennon v. Holmes*, 1915 WL 1604, at *2 (La. App. Orl. Nov. 8, 1915) (advertising a lost note "may be done as well after as before suit is brought upon

---

[8]Former Louisiana Civil Code article 2280 is now codified as La. Rev. Stat. § 13:3741.

12

the lost instrument.").⁹

Under these circumstances, the Court finds that the Catheys have failed to present evidence that sufficiently demonstrates that there are no genuine issues of material fact that would entitle them to summary judgment on this affirmative defense. *See infra* discussion in Section E. Accordingly, the Catheys' Motion for Summary Judgment in this respect is DENIED.

### E. Notice of Court's Sua Sponte Dismissal

The evidence and arguments presented in LPP's Motion for Summary Judgment asked only for the Court to determine whether its claim was timely. LPP did not move for summary judgment on the Note itself. However, it appears to the Court after reviewing the pleadings and record that there are no remaining affirmative defenses presented by the Catheys that would prevent LPP from recovering on the Note.

Therefore, in accordance with Federal Rule of Civil Procedure 56(c), the Court gives notice to the parties that it will enter judgment *sua sponte* in favor of LPP and against the Catheys ten (10) business days from the date of this ruling if the Catheys fail to present additional evidence showing that LPP is not entitled to summary judgment. *See* Fed. R. Civ. P. 56(c); *see also Celetox Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 477 (5th Cir. 2001) ("Federal District Courts are empowered to enter summary judgment *sua sponte*, so long as the losing party has ten days notice to come forward with all of its evidence in opposition to the motion.") (internal quotation marks and

---

⁹LPP also argues that it may pretermit any requirement for advertisement under § 13:3741 by merely posting an indemnity bond. *See Hammond Asphalt Co. v. Joiner*, 270 So.2d 244, 246 (La. App. 1972) ("By thus complying with the bond portion of the Statute advertisement of the lost note can be dispensed with, and the problem of whether the advertisement was timely made has become moot.").

13

citations omitted).

## III. CONCLUSION

For the foregoing reasons, LPP's Motion for Summary Judgment [Doc. No. 13], is GRANTED, and the Court finds that its claim was timely filed. The Cathey's Motion for Summary Judgment [Doc. No. 20] is DENIED. The Court will enter judgment *sua sponte* in favor of LPP and against the Catheys ten (10) business days from the date of this Ruling if the Catheys fail to present additional evidence showing that LPP is not entitled to summary judgment.

MONROE, LOUISIANA, this 23rd day of May, 2006.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE